57,372

STATE OF KANSAS, *Appellant*, v. JEFFREY ALLEN McDANIELS,
*Appellee.*

(703 P.2d 789)

Opinion filed
July 26, 1985.

*Jerry Wells,* assistant district attorney, argued the cause and *Robert T. Stephan,* attorney general, *Jerry L. Harper,* district attorney, and *Kathryn Welch,* legal intern, were on the brief for the appellant.

*Harry E. Warren,* of Lawrence, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action by the State from the trial court's order denying the State's motion to rescind its diversion agreement with the defendant. We hold this court is without jurisdiction and dismiss the appeal.

On January 25, 1984, Jeffrey McDaniels (defendant-appellee), Dwight Thuro, and Thomas Green were arrested for stealing four tires and wheels from a pickup truck belonging to Turner Chevrolet in Lawrence, Kansas. At the time they were initially stopped by the police, Thuro was driving the car; Green and

McDaniels were passengers. The tires were found in the trunk of the car. Thuro and McDaniels immediately confessed that they had stolen the tires and wheels from Turner Chevrolet. Green did not confess. All three were charged with felony theft (K.S.A. 1984 Supp. 21-3701). Thuro eventually pled guilty to the charges.

On April 27, 1984, McDaniels was granted a twelve-month diversion, pursuant to K.S.A. 22-2907. The diversion agreement provided that the charges against the defendant would be dismissed with prejudice after twelve months, if he complied with certain specific conditions. The following conditions are pertinent:

"2. Defendant agrees to do each of the following things:

. . . .

"b. Not to violate the laws of the United States, of any State, or of any political subdivision of any State during the term of this agreement. Minor traffic violations shall not be considered violations of the law.

. . . .

"g. To provide a sworn statement of the defendant's involvement in the alleged incident and that of any other persons involved on or before April 30, 1984. To testify truthfully and willingly in any necessary court proceedings involving criminal charges against other persons involved in the same incident."

In the statement provided pursuant to the diversion agreement, and after it was made, McDaniels swore to the following:

"[Defendant] said he and Dwight [Thuro] started taking the wheels off the truck and Green said that he would take the car and drive around so no one would see it. Green drove away in the car while Dwight and McDaniels took the wheels off the truck. McDaniels said he got out to help because Dwight and Green asked him to help. He said while he and Dwight were getting the wheels, Green drove by once, then came back a few minutes later and pulled in. He said Green stopped and got out and unlocked the trunk of the car and helped load the wheels. Officer asked McDaniels if Green took an active part in the theft. McDaniels said yes. Green helped by concealing the car and helping them load the wheels and he knew exactly what was going on."

On July 20, 1984, McDaniels was called by the State as a witness in codefendant Thomas Green's preliminary hearing. On direct examination, when asked why Green left with the car during the theft, defendant said, "I don't know. He just didn't want to be there." When asked why Green came back, defendant replied, "Well, we told him. He didn't want to be there while we was taking them. He left, and we told him to come back and pick us up when, you know." Finally, the prosecutor queried, "So

when he left, he knew that he was to come back to pick up the tires from you, is that correct?" Defendant answered, "Yeah."

On recross, Green's attorney asked, "It was your understanding though that [Green] didn't want to have anything to do with it?", to which defendant replied, "Yeah."

The prosecutor did not inquire as to what was meant by "it." Nor did the prosecutor attempt to refresh McDaniels' memory with, or impeach him with, his previous sworn statement.

Subsequently, Green's case was dismissed at the close of the preliminary hearing for lack of probable cause. The trial court's decision was affirmed by this court in *State v. Green,* 237 Kan. 146, 697 P.2d 1305 (1985).

The State, believing the defendant had given contradictory statements under oath, filed a motion to rescind diversion because the defendant had breached two of the conditions in the agreement. First, he had failed to testify "truthfully and willingly" against Green at the preliminary hearing. Second, by failing to testify truthfully, he had committed perjury which is a violation of the law.

The trial court conducted a hearing on the motion, heard arguments from both counsel, and concluded:

"The Court finds that defendant did not intentionally violate a condition of the diversion. The prosecutor failed to attempt to refresh the witness/defendant's memory with the sworn affidavit available to the State, and due to the length of time and the failure to use such an evidentiary rule, the Court finds the State failed to prove the defendant violated a term of the diversion agreement."

The State appealed from the court's order claiming it was error, and that the court should have found, by a preponderance of the evidence, that the defendant breached his contract with the State.

K.S.A. 22-2911(1) deals with a defendant's failure to fulfill the diversion agreement and provides as follows:

"If the county or district attorney finds at the termination of the diversion period or any time prior thereto that the defendant has failed to fulfill the terms of the specific diversion agreement, the county or district attorney shall inform the district court of such finding and the district court, *after finding that the defendant has failed to fulfill the terms of the specific diversion agreement at a hearing thereon,* shall resume the criminal proceedings on the complaint." (Emphasis added.)

The statute does not provide that the district or county attorney may seek appellate review if the court finds the defendant had not failed to fulfill the terms of the agreement.

Therefore, the threshold question in this case is whether this court has jurisdiction to entertain this appeal.

In *In re Waterman,* 212 Kan. 826, 830, 512 P.2d 466 (1973), this court stated:

"The right to an appeal is neither a vested nor constitutional right, but is strictly statutory in nature. It may be limited by the legislature to any class or classes of cases, or in any manner, or it may be withdrawn completely. It lies within the legislative domain to determine from what orders or judgments an appeal may be taken."

The statutes authorizing appeals by the prosecution in criminal actions are found at K.S.A. 22-3602 and 22-3603.

K.S.A 22-3602(b) provides that appeals may be taken by the prosecution as follows:

"(1) From an order dismissing a complaint, information or indictment;
"(2) From an order arresting judgment;
"(3) Upon a question reserved by the prosecution."

K.S.A. 22-3603 provides:

"When a judge of the district court, prior to the commencement of trial of a criminal action, makes an order quashing a warrant or a search warrant, suppressing evidence or suppressing a confession or admission an appeal may be taken by the prosecution from such order if notice of appeal is filed within ten (10) days after entry of the order. Further proceedings in the trial court shall be stayed pending determination of the appeal."

In order to have a final appealable judgment under K.S.A. 22-3602, a sentence must have been imposed or the imposition of the sentence suspended, or the case dismissed prior to trial. *State v. Freeman,* 236 Kan. 274, 689 P.2d 885 (1984). As long as the trial court has not terminated the case, and it is still pending in that court, an appeal taken by the State is interlocutory in nature. *State v. Freeman,* 234 Kan. 278, 670 P.2d 1365 (1983). In order for an interlocutory appeal to be allowed, it must fit within the provisions of K.S.A. 22-3603.

The State argues the trial court's order denying revocation of the diversion agreement was essentially an order "suppressing evidence" within the meaning of the statute. The appellee, on the other hand, argues that cases brought under the statute have always dealt with evidentiary questions and that since the trial court's order does not involve an evidentiary question, this appeal does not fall within the provisions of K.S.A 22-3603.

The purpose of K.S.A. 22-3603 is to permit appellate review of pretrial rulings which may be determinative of the case. *State v. Newman,* 235 Kan. 29, 680 P.2d 257 (1984); *State v. Martin,* 233 Kan. 148, 660 P.2d 563 (1983). As this court stated in *State v. Newman,* 235 Kan. at 35:

"We are convinced that this broad interpretation of K.S.A. 22-3603 is consistent with the stated purpose of that section as expressed by the Judicial Council comment at the time it was adopted—that the section is intended to permit appellate review of trial court rulings on pretrial motions, *which may be determinative of the case.* [Emphasis in original.] We wish to emphasize, however, that the appellate courts of Kansas should not take jurisdiction of the prosecution's interlocutory appeal from every run-of-the-mill pretrial evidentiary ruling of a district court, especially in those situations where trial court discretion is involved. Interlocutory appeals are to be permitted only where the pretrial order *suppressing or excluding evidence* places the State in a position where its ability to prosecute the case is substantially impaired." (Emphasis added.)

The primary reason for allowing the State to take interlocutory appeals from suppression orders which substantially impair its ability to prosecute the case is to avoid later problems with double jeopardy. In this case, even though the defendant may eventually have his charges dismissed with prejudice, jeopardy has not attached. Therefore, the State may appeal after the dismissal, and if the appeal is sustained, the defendant may be tried. Accordingly, the potential for a double jeopardy problem which exists in other cases where interlocutory appeals are permitted does not exist in this case.

Also, the possibility still exists that the defendant may violate his diversion agreement and the trial court, after conducting a hearing, may decide to revoke the diversion and proceed to trial.

We find in this case evidence was neither suppressed nor excluded within the meaning of the statute. Moreover, there is still a chance the defendant may be brought to trial. If he is, the State's ability to prosecute the case will not be impaired in any way. Accordingly, we hold the trial court's order was not appealable under K.S.A. 22-3603.

The State further argues that if this case is not entertained as an interlocutory appeal, the State should be allowed to restyle the case as an action in mandamus. Mandamus is an extraordinary writ which lies to compel performance of a mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant and a want of any other appropriate and

adequate remedy. See *Arney v. Director, Kansas State Penitentiary*, 234 Kan. 257, 671 P.2d 559 (1983). In this case, the trial court exercised its power of discretion in finding the State had not done everything it could have to get the desired testimony out of the defendant at Green's preliminary hearing. The court then reviewed the evidence and concluded the defendant had not breached his agreement to testify willingly and truthfully against Green. Clearly, the judge had no "mandatory duty" to find the diversion agreement had been breached. If such a duty existed, the K.S.A. 22-2911 hearing requirement would be rendered meaningless.

The extraordinary remedy of mandamus is not appropriate in this case where only a factual issue—whether the defendant breached the agreement—is involved.

At the present time, there is no statute which provides for an appeal to be taken by the State from a trial court's order denying revocation of a diversion agreement. We note that in a closely analogous situation—probation—the State is also without an avenue to appeal from a trial court's decision denying revocation of probation when the State thinks the terms of probation have been violated.

Until the legislature chooses to create a right in the State to appeal from a pretrial order denying the State's request to revoke diversion, the State may not appeal prior to the completion of the diversion and the dismissal of the case by the district court.

The appeal is dismissed.