NOT DESIGNATED FOR PUBLICATION

No. 121,837

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BILL AARON ROSE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Chase District Court; JEFFRY J. LARSON, judge. Opinion filed December 23, 2020. Affirmed in part, reversed in part, and remanded with directions.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., MALONE, J., and MCANANY, S.J.

PER CURIAM: In this appeal Bill Aaron Rose challenges (1) his conviction of burglary, (2) the district court's refusal to suppress evidence obtained during what Rose contends was an improper police stop, and (3) the district court's failure to give a jury instruction on misdemeanor interference with a law enforcement officer.

In January 2019, Rose was charged with burglary of a dwelling after he was seen walking away from a building that had been burglarized. The building is located in Cedar Point and is owned by Gerald Carpenter. Gerald inherited the building when his father passed away in July 2018. Gerald's father had used part of the building as an office and repair shop and the other part as his living quarters. The repair shop business had not

1

been in operation since about 2002. After Gerald's father's death, the household furnishings were left in place, but no one lived in the building. Either Gerald or one of his sons, Levi or Dylan, regularly checked on the place once every week or two.

On January 5, 2019, Levi and Teisha, his wife, planned on going deer hunting with Dylan. The plan was to meet at Gerald's property in Cedar Point before going to nearby properties where they had permission to hunt.

When they arrived at Cedar Point, Dylan did one of their routine checks on the building. In doing so he realized that someone had been inside the building. He alerted the others. When Levi and Teisha entered the building, they noticed the smell of fresh cigarette smoke and a number of items out of place on the residence side of the building. They also discovered a ladder leading up to a broken window upstairs. As they went through the house they saw that cabinet doors were standing open and the door to the gun safe was open.

When Teisha left the building she saw Rose walking away just off the property. She called 911 and followed Rose while she stayed on the phone with the police dispatcher until Chase County Sheriff's Deputy Logan Plummer arrived at the scene approximately 30 minutes later. Teisha told the dispatcher while she was following Rose that Rose put something into his pocket that looked like either a hammer or a hatchet. The dispatcher told Plummer "to respond to Cedar Point for some suspicious circumstances, possibly a break-in." The dispatcher also cautioned Plummer that Rose might be armed.

Plummer was in uniform when he located Rose. He approached Rose and asked Rose if he had time to talk. Rose appeared hostile from the very beginning. Rose smelled of cigarette smoke. Plummer asked Rose for identification and related information, and Rose provided Plummer with some information. Ultimately Rose refused to answer any

2

further questions and started to walk away, telling Plummer that he knew his rights. When Plummer moved to detain Rose, Rose fled. Plummer caught Rose and wrestled him to the ground and placed him in handcuffs. In the process, two vials of gunpowder fell from Rose's pocket. In a search incident to Rose's arrest, Plummer found a bottle of solvent. Levi identified the items as having been taken from his father's building.

Rose was charged with burglary of a dwelling, theft, felony interference with law enforcement, and criminal damage to property. He moved to suppress the evidence Plummer obtained during his confrontation with Rose. He argued that Plummer lacked reasonable suspicion to initially detain him and that Plummer unnecessarily and improperly extended the stop. Following an evidentiary hearing, the district court denied Rose's motion.

On the morning of the jury trial but before the trial commenced, Rose moved for reconsideration of the district court's denial of his suppression motion. The court denied the motion. Rose did not ask for a continuing objection at trial to the admission of the items Plummer found on Rose's person when he was arrested. Rose then moved to suppress his pre-*Miranda*-warning statements to Plummer when he was arrested. The court sustained that motion.

At Rose's trial, the items Plummer found on Rose's person at the time of the arrest were admitted into evidence without objection. At the conclusion of the testimony, the court reviewed with the parties the court's proposed instructions. They included an instruction on interference with a law enforcement officer while the officer was investigating a reported burglary. Rose did not object to the instruction or propose any alternative. The court's proposed instruction on this charge was given to the jury. The jury found Rose guilty of burglary, theft, and interference with a law enforcement officer but acquitted him of criminal damage to property.

At sentencing, the court noted that Rose was subject to presumptive imprisonment because of his prior burglary convictions. The court denied Rose's request for a departure sentence and sentenced him to a controlling term of 38 months' imprisonment. Rose's appeal brings the matter to us.

*Rose's Burglary Conviction*

Rose contends there was insufficient evidence to convict him of burglary of a dwelling. In considering this issue, we review the evidence in the light favoring the State to determine whether we are convinced that a rational fact-finder could have found Rose guilty beyond a reasonable doubt on this charge. In doing so, we do not reweigh the evidence, resolve evidentiary conflicts, or redetermine the credibility of any of the witnesses. See *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

Rose's burglary conviction is based on K.S.A. 2019 Supp. 21-5807(a)(1), which states: "Burglary is, without authority, entering into or remaining within any dwelling, with intent to commit a felony, theft or sexually motivated crime therein." Rose contends that the evidence does not establish that he entered a dwelling. A "dwelling" as used in K.S.A. 2019 Supp. 21-5807(a)(1) is defined as "a building or portion thereof . . . which is used or intended for use as a human habitation, home or residence." K.S.A. 2019 Supp. 21-5111(k). Rose argues that because Gerald's building was vacant at the time, he could not have been convicted of burglary of a dwelling.

In *State v. Downing*, 311 Kan. 100, 103-07, 456 P.3d 535 (2020), the jury convicted the defendant of burglary of a dwelling after she broke into a rural farmhouse and took items from inside. The owner testified at trial that the farmhouse had been occupied as a residence until two or three years before the burglary. The house had sat empty during the interim though "'we keep stuff in there.'" 311 Kan. at 101. The owner testified that the place was intended to be used as a residence. "'I would like somebody to

4

live there but I can't. It's too dangerous to rent it to somebody with all my stuff out there.'" 311 Kan. at 101.

On appeal Downing claimed the evidence was insufficient to support a conviction of burglary of a dwelling. In reversing Downing's conviction our Supreme Court stated that a building's residential character does not render a building a dwelling. Instead, to be a dwelling there must be proof of a present, subjective intention to use the burgled building as a residence when the building was not presently being used as a residence when the crime occurred. "Absent proof the place burgled was used as a human habitation, home, or residence, the statute's plain language requires a showing of proof that someone had a present, subjective intent at the time of the crime to use the place burgled for such a purpose." 311 Kan. at 107.

The State points out that Gerald's building, though unoccupied, was fully furnished and habitable at the time of the crime. Moreover, family members regularly checked on the condition of the building. But these facts do not obviate the fact that there was no evidence that anyone had a present, subjective intent to use the building as a dwelling. The evidence does not support Rose being convicted of burglary of a dwelling under K.S.A. 2019 Supp. 21-5807(a)(1).

Rose's conviction under K.S.A. 2019 Supp. 21-5807(a)(1)—burglary of a dwelling—is a person felony. Burglary under K.S.A. 2019 Supp. 21-5807(a)(2) involves burglary of a structure that is *not* a dwelling and this lesser form of burglary is a nonperson felony. See K.S.A. 2019 Supp. 21-5807(c)(1)(A)(i) and (ii).

When a defendant has been convicted of a greater offense—such as burglary of a dwelling— but the evidence only supports a lesser included offense—such as burglary of a structure that is not a dwelling—we must remand for resentencing the defendant for the lesser included offense. See *State v. Wilt*, 273 Kan. 273, 278, 44 P.3d 300 (2002).

5

Here, the facts presented at trial establish that Rose burgled a structure that was not a dwelling. Rose's conviction for burglary of a dwelling under K.S.A. 2019 Supp. 21-5807(a)(1) is reversed, and the case is remanded to the district court for sentencing Rose under K.S.A. 2019 Supp. 21-5807(a)(2) for burglary of a structure that is not a dwelling, a nonperson felony.

*Rose's Motion to Suppress*

Rose argues the district court should have suppressed the evidence Plummer obtained when he stopped and questioned Rose. He argues that Plummer exceeded his authority under K.S.A. 22-2402(1) because he extended the stop after Rose gave his name, address, and an explanation of his actions. Rose contends that Plummer violated his rights under the Fourth Amendment to the United States Constitution when Plummer continued to ask him questions.

When the district court denies a motion to suppress evidence, the moving party must object to the introduction of that evidence at the time it is offered at trial to preserve the issue for appeal. *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862 (2016). As the Supreme Court stated in *State v. Sean*, 306 Kan. 963, 973, 399 P.3d 168 (2017): "When a party moves to suppress evidence and the court denies the motion, the party must timely and specifically renew this objection when the opposing party moves to admit the evidence during trial. Failure to do so results in a failure to preserve the issue for appeal."

Here, the State contends on appeal that this claim has not been preserved for appeal because Rose failed to object at trial when this evidence was offered and received. The State is correct that Rose failed to object to this evidence at trial. Rose has not responded to this contention.

After the district court denied Rose's motion to reconsider and before commencing the trial, Rose argued the district court should suppress his pre-*Miranda*-warning statements to Plummer. The district court granted this motion, but Rose did not request a continuing objection to the admission of the items discovered by Plummer in their initial encounter. Those items were admitted into evidence without objection, and Rose failed to object later when Plummer and Gerald testified about these exhibits.

Accordingly, we conclude that this issue has not been preserved for appeal.

*The Jury Instruction on Interference with a Law Enforcement Officer*

Interference with a law enforcement officer is "knowingly obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty." K.S.A. 2019 Supp. 21-5904(a)(3). Interference with a law enforcement officer can be either a felony if the interference occurred "in the case of a felony" or a misdemeanor if the interference occurred "in the case of a misdemeanor." K.S.A. 2019 Supp. 21-5904(b)(5)(A) and (B).

Rose does not claim the district court erred in its instruction on felony interference—that Rose interfered with Deputy Plummer's investigation of a burglary, which is a felony. Rather, he contends that the district court erred in failing to add a jury instruction on the lesser included misdemeanor offense of interfering with Plummer's investigation of a break-in, a misdemeanor. Rose did not proffer at trial the instruction he now advances. But he need not do so in order to prevail on this issue if the failure to give this instruction was clear error. See K.S.A. 2019 Supp. 22-3414(3).

The relevant portion of the district court's instruction to the jury was as follows:

"Instruction No. 13. The defendant is charged in Count 3 with interference with law enforcement by obstructing official duty. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"No. 1. Deputy Logan Plummer was discharging an official duty; namely, investigating a *burglary* report." (Emphasis added.)

Rose apparently contends that the district court should have added an instruction that mirrors Instruction No. 13 but substitutes the word "*break-in*" for the word "*burglary*." (Obviously, more than this would be necessary to avoid jury confusion of two instructions on the same charge with only a one-word difference between them.)

Rose claims the use of the phrase "break-in" is appropriate because that is how the dispatcher characterized the matter when sending Deputy Plummer to investigate. Rose equates breaking in with the crime of criminal trespass as defined in K.S.A. 2019 Supp. 21-5808. Under that statute entering a structure without being authorized or privileged to do so is a misdemeanor.

In considering whether the district court erred in not giving a misdemeanor interference instruction, we must determine whether the instruction was legally and factually appropriate. In doing so, we exercise unlimited review of the record. See *State v. Williams*, 295 Kan. 506, Syl. ¶ 4, 286 P.3d 195 (2012).

Here, Rose was charged with felony interference with law enforcement under K.S.A. 2019 Supp. 21-5904(a)(3). Misdemeanor interference is a lesser included crime of felony interference. See K.S.A. 2019 Supp. 21-5904(b)(5); see also K.S.A. 2019 Supp. 21-5109(b)(1) (defining a lesser included crime as a lesser degree of the same crime).

8

Thus, an instruction on misdemeanor interference was legally appropriate. But the parties dispute whether an instruction on misdemeanor interference was factually appropriate.

"[F]or a lesser included offense to be factually appropriate, there must be actual evidence in the record, together with reasonable inferences to be drawn from that actual evidence that would reasonably support a conviction for the lesser crime." *State v. Wade*, 295 Kan. 916, 926, 287 P.3d 237 (2012).

It was Teisha who called 911. Prior to making the call she knew that someone had broken into and entered the building through a second-story window and that when she walked through the building she saw that the cabinet doors were standing open and the door to the gun safe was open, raising the inference that something more than a mere criminal trespass had occurred.

The record does not disclose the details of what she told the 911 dispatcher who received the call, but we know she was on the phone with the dispatcher for about 30 to 35 minutes. Plummer testified that the dispatcher told him "to respond to Cedar Point for some suspicious circumstances, possibly a break-in that had previously occurred." While this may characterize the dispatcher's reason for dispatching Plummer to the scene, it does not establish Plummer's state of mind when he approached Rose.

"The touchstone for the classification of the offense is the reason for the officer's approaching the defendant who then flees or otherwise resists." *State v. Hudson*, 261 Kan. 535, 538-39, 931 P.2d 679 (1997). Here, Plummer expressed his reason for approaching Rose. He testified:

"Q. Okay. Now, Deputy Plummer, at the time that these events occurred with Mr. Rose, did—were you conducting an investigation?
"A. Yes.

9

"Q. Was it a felony or a misdemeanor investigation?

"A. A felony.

"Q. And, specifically, that felony was what?

"A. Burglary."

The evidence supports an instruction on felony obstruction but not an instruction on misdemeanor obstruction. Besides, even if the district court should have instructed on interference with the investigation of a break-in, we do not find clear error. See *State v. Knox*, 301 Kan. 671, 682, 347 P.3d 656 (2015). To the contrary, we are firmly convinced that the jury would have found Rose guilty of felony interference with a burglary investigation rather than misdemeanor interference given Plummer's clear expression of the nature of his investigation at the time of Rose's interference.

Affirmed in part, reversed in part, and remanded with directions to resentence Rose for burglary of a structure that is not a dwelling.